**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| HENRY VOGT MACHINE CO., | )         CHAPTER 11 |
| | ) |
| DEBTOR. | )         CASE NO. 12-34186 |
| | ) |

## <u>AMENDED PLAN OF LIQUIDATION OF HENRY VOGT MACHINE CO.</u>

**Dated:  December 22, 2014**

**WYATT, TARRANT & COMBS, LLP**
500 West Jefferson Street, Suite 2800
Louisville, Kentucky 40202
Telephone:  (502) 589-5235
Facsimile:  (502) 589-0309
lexbankruptcy@wyattfirm.com

**Counsel for Debtor and Debtor-in-Possession**

# TABLE OF CONTENTS

ARTICLE I.

DEFINED TERMS AND RULES OF INTERPRETATION ........................................................... 1

    A.    Rules of Interpretation ........................................................................... 1
    B.    Defined Terms ........................................................................................ 1

ARTICLE II.

TREATMENT OF UNCLASSIFIED CLAIMS ....................................................................... 12

    A.    Administrative Claims ......................................................................... 12
    B.    DIP Loan Claim .................................................................................. 13
    C.    Provost Administrative Claim ............................................................. 13
    D.    Priority Tax Claims ............................................................................. 13
    E.    United States Trustee Statutory Fees .................................................. 14

ARTICLE III.

CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .............................. 14

    A.    Classification of Claims and Equity Interests ..................................... 14
    B.    Treatment of Claims and Equity Interests ........................................... 15
    C.    Acceptance or Rejection of the Plan .................................................... 19
    D.    Nonconsensual Confirmation .............................................................. 20

ARTICLE IV.

MEANS FOR IMPLEMENTATION OF THE PLAN ............................................................. 20

    A.    General Settlement of Claims .............................................................. 20
    B.    Funding of the Plan ............................................................................. 20
    C.    Assignment of the Annuity ................................................................. 21
    D.    Abandonment of Assets ...................................................................... 21
    E.    Assignment of the Insurance Policies ................................................. 21
    F.    Effectuating Documents; Further Transactions ................................... 21
    G.    Corporate Existence and Dissolution .................................................. 22
    H.    Cancellation of Equity Interests .......................................................... 22
    I.    Pension ................................................................................................ 22
    J.    Disposal of Records ............................................................................ 23
    K.    Termination of Death Benefit Plan and Distribution of Retired Life Fund ......... 23
    L.    Vesting the Insurance Policies in Creditors' Trust ............................... 24
    M.    Standing of the Creditors' Trustee and/or Plan Trustee ...................... 24
    N.    Appointment of the Plan Trustee ........................................................ 24

ARTICLE V. ............................................................................................................... 25

PROVISIONS GOVERNING DISTRIBUTIONS ................................................................ 25

    A.    Distributions on Account of Claims Allowed as of the Effective Date ............... 25
    B.    Distributions on Account of Disputed Claims ..................................................... 25
    C.    Calculation of Amounts to Be Distributed ........................................................... 25
    D.    Delivery of Distributions ..................................................................................... 26

ARTICLE VI. .............................................................................................................. 28

PROVISIONS GOVERNING DISPUTED CLAIMS ........................................................... 28

    A.    Objection to Claims and Interests ....................................................................... 28
    B.    Resolution of Disputed Claims ........................................................................... 28
    C.    Reserve for Disputed Claims ............................................................................... 28

ARTICLE VII. ............................................................................................................. 29

CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................................................ 29

    A.    Conditions Precedent to the Effective Date ........................................................ 29
    B.    Notice of Effective Date ...................................................................................... 30
    C.    Effect of Non-Occurrence of Conditions to the Effective Date ........................... 30

ARTICLE VIII. ............................................................................................................ 30

EFFECTS OF CONFIRMATION .................................................................................... 30

    A.    Immediate Binding Effect .................................................................................... 30
    B.    Discharge ............................................................................................................. 30
    C.    Exculpation as to Plan Solicitation ..................................................................... 31
    D.    Preservation of Releases ...................................................................................... 31
    E.    Preservation of Insurance .................................................................................... 31

ARTICLE IX. .............................................................................................................. 31

RETENTION OF JURISDICTION .................................................................................. 31

ARTICLE X. ............................................................................................................... 33

MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN ...................................... 33

    A.    Modification of the Plan ...................................................................................... 33
    B.    Effect of Confirmation on Modifications ............................................................ 33
    C.    Revocation of the Plan ........................................................................................ 33

## ARTICLE XI.

MISCELLANEOUS PROVISIONS ......................................................................................... 34

    A.    Additional Documents ...................................................... 34
    B.    Payment of Statutory Fees ................................................ 34
    C.    Successors and Assigns .................................................... 34
    D.    Notices ........................................................................... 35
    E.    Reservation of Rights ...................................................... 36
    F.    Terms of Injunctions or Stays .......................................... 37
    G.    Entire Agreement ............................................................ 37
    H.    Governing Law ............................................................... 37
    I.    Nonseverability of Plan Provisions upon Confirmation ......... 37
    J.    Closing of Chapter 11 Case .............................................. 38
    K.    Conflicts ........................................................................ 38
    L.    No Stay of Confirmation Order ......................................... 38

## PLAN OF LIQUIDATION OF HENRY VOGT MACHINE CO.

Henry Vogt Machine Co., as debtor and debtor-in-possession (the "Debtor"), proposes this amended plan of liquidation (the "Plan") for the resolution of the outstanding claims against, and equity interests in, the Debtor.  Capitalized terms used in the Plan and not otherwise defined have the meaning ascribed to such terms in Article I.B. of the Plan.  Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtor's history, business, and financial information, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.

### ARTICLE I.

### DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Rules of Interpretation*

1.    For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and neuter gender; (b) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (c) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (d) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (e) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (f) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006 shall apply in computing any period of time prescribed or allowed hereby.

B.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Claim*" means a Claim (other than a DIP Loan Claim) for costs and expenses of administration under sections 503(b) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court); and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

2.     "*Administrative Claims Bar Date*" means the date that is the 20th day after the Confirmation Date.

3.     "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

4.     "*Allowed*" means with respect to Claims: (a) any Claim, proof of which was timely filed on or before the applicable Bar Date; (b) any Claim that is listed in the Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated, and for which no proof of Claim has been timely filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court.

5.     "*Alternative Distribution Date*" means any date, other than the Initial Distribution Date, when Distributions under the Plan are made to Holders of Claims entitled to receive Distributions under the Plan.

6.     "*Annuity*" means that Deferred Joint and Survivor Annuity, dated December 23, 1981, and identified as Policy No. 3,260,263-3, initially issued for the benefit of F H Prince & Co. Inc. with named annuitants William F. Hagen and Dorothea O. Hagen.

7.     "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws."

8.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time, as it applies to the Chapter 11 Case.

9.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of Kentucky or any other court or adjunct thereof exercising competent jurisdiction.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, and the general and local rules of the Bankruptcy Court.

11.     "*Bar Date*" means the Administrative Claims Bar Date and the General Unsecured Claims Bar Date, as applicable.

2

12.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

13.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including, but not limited to, bank deposits, checks, wire transfers and other similar items.

14.    "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, in each case held by the Debtor, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

15.    "*Chapter 11 Case*" means the chapter 11 case filed for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and assigned Case No. 12-34186.

16.    "*Claim*" means any claim against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

17.    "*Class*" means a category of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

18.    "*Collateral*" means the Debtor's tangible and intangible real and personal property subject to valid, perfected and unavoidable Liens and the proceeds thereof.

19.    "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Case.

20.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

21.    "*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

22.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

23.     "Creditors' Trust" means a trust established for the benefit of the Unsecured Tort Creditors and which will be administered by a Trustee designated by Provost, and into which the Insurance Policies and all associated claims, rights and property interests of every kind and nature will be assigned.  The Creditors' Trust shall be a grantor trust.

24.     "*CRO*" means the Chief Restructuring Officer of the Debtor, David E. Mack, whose employment was approved pursuant to the CRO Order.

25.     "*CRO Order*" means the order entered by the Bankruptcy Court in the Chapter 11 Case on October 30, 2012 approving the employment of the CRO *nunc pro tunc* to the Petition Date and granting other related relief.

26.     "*Death Benefit Plan*" means the program in place on the Petition Date, by which the Debtor provided beneficiaries of eligible retirees with a one-time lump sum payment, in an amount between $1,350 and $7,000, upon the death of said retiree, in accordance with the terms of the program.

27.     "*Death Benefit Plan Administrator*" means Transamerica / Monumental Life Insurance Co., or any other Entity that serves as the "Insurance Company" under that Deposit Administration Agreement Supplement to Group Insurance Policy Number GT 399 & Number GT 473, dated August 31 1977, or otherwise administers the Retired Life Fund.

28.     "*Death Benefit Plan Participants*" means all former employees of the Debtor who are eligible to receive the Death Benefit Plan Payment pursuant to the USW Settlement.

29.     "*Death Benefit Plan Payment*" means the payment from the Retired Life Fund, after the payment of reasonable expenses to the Death Benefit Plan Administrator, to the Death Benefit Plan Participants, in accordance with the terms of the USW Settlement.

30.     "*DIP Loan*" means that certain debtor-in-possession credit facility between the Debtor, as borrower, and CF One, LLC, as lender, approved by the Bankruptcy Court on September 29, 2012 and October 23, 2012, and September 23, 2014 [Docket Nos. 29, 57, and 393], as amended, modified, ratified, extended and renewed from time to time thereafter.

4

31.      "*DIP Loan Claim*" means any Claim held by the DIP Lender arising under or related to the DIP Loan.

32.      "*DIP Lender*" means CF One, LLC, in its capacity as lender under the DIP Loan.

33.      "*Disclosure Statement*" means the Disclosure Statement for the Plan, including, without limitation, all exhibits and schedules thereto, as amended, supplement or modified from time to time, prepared and distributed in accordance with sections 1125 of the Bankruptcy Code and incorporated herein by reference.

34.      "*Disputed Claim*" means, with respect to any Claim, any Claim that is not yet Allowed.

35.      "*Distribution*" means a payment made to Holders of Claims pursuant to the Plan.

36.      "*Effective Date*" means the date selected by the Debtor that is a Business Day no later than 60 Business Days after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect and (b) all conditions to effectiveness of the Plan have been satisfied or waived.

37.      "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

38.      "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferrable, together with any warrants or other contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto.

39.      "*ERISA*" means the Employee Retirement Security of 1974, 29 U.S.C. Chapter 18, as amended from time to time.

40.      "*Estate*" means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

41.      "*Final DIP Advance*" means the advance, in an amount not to exceed $88,000.00, to be made by the DIP Lender to the Debtor on the Confirmation Date subject to and in accordance with that Second Agreed Order Amending and Supplementing Final Order (I) Authorizing the Debtor-in-Possession to (A) Obtain Post-Petition Financing and (B) Utilize Cash

5

Collateral; (II) Providing Adequate Protection and Granting Liens, Security Interests and Superpriority Claims [Docket No. 393]

42.      "*Final Order*"  means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction:  (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to appeal from or to seek review or rehearing or petition for certiorari has expired; and (iii) that is no longer subject to review, reversal, modification or amendment; provided, however, that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

43.      "*General Administrative Claim*" means any Administrative Claim other than a Professional Fee Claim.

44.      "*General Unsecured Claim*" means any claim against the Debtor in Class 6B other than an Administrative Claim, Priority Tax Claim, Other Priority Claim, Secured Claim, USW Death Benefit Participant Claim, Non-USW Death Benefit Participant Claim, Retiree Medical Benefit Claim or General Unsecured Tort Claim.

45.      "*General Unsecured Claims Bar Date*" means June 11, 2013 at 5:00 p.m. (prevailing Eastern Time).

46.      "*General Unsecured Tort Claim*" means any claim against the Debtor in Class 6A that is an Unliquidated Asbestos Claim.

47.      "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

48.      "*Holder*" means an Entity holding a Claim or Equity Interest.

49.      "*Impaired*" means, with respect to any Claim, Equity Interest, or Class of Claims or Equity Interests, that such Claim, Equity Interest or Class is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

50.      "*Initial Distribution Date*" means that date that is as soon as practicable after the Effective Date, but no later than 60 days after the Effective Date, when Distributions under the Plan shall commence for each Class entitled to receive Distributions.

51. "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

52. "*Insurance Policies*" means any and all insurance policies and coverage available to the Debtor which may be utilized for the payment or reimbursement of liability, indemnity or defense costs arising from or related to the General Unsecured Tort Claims in Class 6A, together with coverage and other rights, claims, causes of action or any beneficial chose in action related thereto (including but not limited to statutory and other rights) under, arising from, or related to any insurance policies in effect at any time on or before the Effective Date naming any Debtor (or any predecessor, or any past or present subsidiary or affiliate) as an insured, or otherwise affording the Debtor indemnity or insurance coverage, upon which any claim has been or may be made with respect to or related to any General Unsecured Tort Claim.

53. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

54. "*Non-USW Death Benefit Plan Participant*" a Death Benefit Plan Participant that is not a USW Retiree.

55. "*Non-USW Death Benefit Plan Participant Claim*" means any Claim held by a Non-USW Death Benefit Plan Participant arising under or related to the Death Benefit Plan.

56. "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or a PBGC Claim.

57. "*PBGC*" means the Pension Benefit Guaranty Corporation.

58. "*PBGC Claims*" means all Claims asserted by the PBGC against the Debtor, including, but not limited to, those Claims identified as claim numbers 459, 464, and 467 in the Debtor's claims register.

59. "*Pension*" means the Henry Vogt Machine Co. Merged Pension Plan, as it may be amended and modified from time to time.

60. "*Pension Termination Date*" means the date on which (i) all assets and accrued obligations under the Pension are transferred, annuitized, assigned, liquidated, sold or otherwise made the obligation of an entity other than the Pension; (ii) the Pension is voluntarily or involuntarily terminated; or (iii) the Debtor, subject to approval of the PBGC, is formally removed as the sponsor and / or responsible person for the Pension and no longer has any

responsibility for the administration of the Pension.  The Debtor shall file a notice of the Pension Termination Date in the record of the Chapter 11 Case.

61.    "*Petition Date*" means September 14, 2012, the date on which the Debtor commenced the Chapter 11 Case.

62.    "*Plan*" means this plan of liquidation under chapter 11 of the Bankruptcy Code (including all exhibits and schedules annexed hereto), either in its present form or as it may be altered, modified, amended or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or the terms hereof, as the case may be.

63.    "*Plan Trustee and Tort Creditors' Trust Agreement*" refers to the agreement between Debtor and the Plan Trustee, attached as Exhibit 1 to the Plan, which provides the terms of the Creditors' Trust and addresses its administration after the Effective Date.

64.    "*Plan Trustee*" means the trustee appointed by Provost to serve as the Trustee for the Creditors' Trust.

65.    "*Prepetition Secured Lender*" means CF One, LLC, in its capacity as lender under the Prepetition Secured Loan.

66.    "*Prepetition Secured Lender Claim*" means any Claim held by the Prepetition Secured Lender arising under or related to the Prepetition Secured Loan.

67.    "*Prepetition Secured Loan*" means that loan evidenced by that certain Promissory Note, dated December 31, 2010, issued by the Debtor in favor of the Prepetition Secured Lender and all obligations, encumbrances and documents related thereto.

68.    "*Priority Tax Claim*" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

69.    "*Professional*" means (i) any person or Entity employed in the Chapter 11 Case pursuant to a Final Order in accordance with section 327 or 328 of the Bankruptcy Code; and (ii) the CRO.

70.    "*Professional Fee Claim*" means an Administrative Claim under sections 330, 331 or 503 of the Bankruptcy Code for services rendered or reimbursement of expenses incurred

8

by a Professional in the Chapter 11 Case on or prior to the Effective Date. Professional Fee Claims expressly exclude the Provost Allowed Administrative Claim.

71.     "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

72.     "*Provost*" refers to Provost Umphrey, LLP, a law firm representing certain Unsecured Tort Claims in Class 6A.

73.     "*Provost Allowed Administrative Claim*" shall refer to the Allowed Administrative Claim of Provost Umphrey in the amount of $75,000 on account of its substantial contribution which Administrative Claim shall be an Allowed Claim under section 503 of the Bankruptcy Code and be payable as provided in the Plan, with recourse limited solely to recoveries obtained by the Creditors' Trust.

74.     "*Records*" means all documents, records, physical and electronic files, working papers and other tangible items retained by the Debtor in the ordinary course of its business and this Chapter 11 Case, including all documents retained by the Debtor pursuant to that Agreed Order Authorizing the Destruction / Abandonment of Obsolete Documents and Records of the Debtor [Docket No. 307].

75.     "*Remaining Assets*" means all legal or equitable interests in property of the Debtor or the Estate, including, but not limited to, the Avoidance Actions and the Causes of Action. The Remaining Assets do not include the Remaining Cash, the Annuity and the Reversionary Interest.

76.     "*Remaining Cash*" means all Cash of the Debtor remaining after payment of the Administrative Claims, the Priority Tax Claims, the Other Priority Claims, and the Retiree Medical Plan Participant Claims.

77.     "*Retiree Benefit Termination Order*" means that Order Authorizing the Debtor to Terminate Non-Vested Retiree Medical and Death Benefits, entered by the Bankruptcy Court on July 25, 2013 [Docket No. 222].

78.     "*Retiree Medical Plan*" means the Henry Vogt Machine Co. Retiree Medical Plan and / or any other plan or program administered or funded by the Debtor pursuant to which the Debtor provided reimbursement for the medical expenses of its current or former employees.

79.    "*Retiree Medical Plan Participants*" means all former employees of the Debtor who were participants in the Retiree Medical Plan at the time of entry of the Retiree Benefit Termination Order.

80.    "*Retiree Medical Plan Participant Claim*" means any Claim held by a Retiree Medical Plan Participant arising under or related to the Retiree Medical Plan.

81.    "*Retiree Medical Plan Payment*" means payment to the Retiree Medical Plan Participants in an amount equal to Debtor's share of each Retiree Medical Plan Participant's medical insurance premium payment under the Retiree Medical Plan for the month of August 2013, in accordance with the terms of the USW Settlement.

82.    "*Retired Life Fund*" means the account or accounts pre-funded by the Debtor to satisfy its obligations under the Death Benefit Plan, as the term is used in that Deposit Administration Agreement Supplement to Group Insurance Policy Number GT 399 & Number GT 473, between the Debtor and Commonwealth Life Insurance Company, dated August 31, 1977.

83.    "*Reversionary Interest*" means any legal or equitable interest of the Debtor in any excess assets of the Pension upon occurrence of the Pension Termination Date.

84.    "*Sales*" means the sales of substantially all assets of the Debtor to Pettit Environmental, Inc., Ormsby Management, LLC and 1000 Ormsby LLC, pursuant to the Sale Orders, and additional *de minimis* sales of personal property of the Debtor on the terms and conditions approved by the Bankruptcy Court.

85.    "*Sale Orders*" means the orders approving the sales of substantially all assets of the Debtor entered by the Bankruptcy Court on April 11, 2013 [Docket No. 131] and October 16, 2013 [Docket Nos. 277, 278, 279].

86.    "*Schedules*" means the Schedule of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code, as the same may have been amended, modified or supplemented from time to time.

87.    "*Secured Claim*" means, when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable

10

pursuant to applicable law or by reason of a Bankruptcy Court order, to the extent of the value of the creditor's interest in the Estate's interest in such property, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

88. "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

89. "*Unliquidated Asbestos Claim*" means a General Unsecured Claim that: (a) is based upon the Holder's purported exposure to asbestos or asbestos containing products manufactured by the Debtor, or any claim for indemnity related to same, and (b) is not the result of a final judgment, settlement, or other agreement establishing the Debtor's liability for any resulting damage or injury suffered by such Holder.

90. "*USW*" means the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO CLC.

91. "*USW Death Benefit Plan Participant*" means a Death Benefit Plan Participant that is also a USW Retiree.

92. "*USW Death Benefit Plan Participant Claim*" means any Claim held by a USW Death Benefit Plan Participant arising under or related to the Death Benefit Plan.

93. "*USW Retirees*" means the former employees of the Debtor that were members of the USW or one of its predecessors.

94. "*USW Settlement*" means the settlement agreement between the Debtor and the USW approved by that Order Granting Emergency Motion Authorizing the Debtor to Enter Into a Settlement Agreement with the United Steelworkers Pursuant to Bankruptcy Rule 9019 and Sections 105(a) and 1114 of the Bankruptcy Code entered by the Bankruptcy Court on August 22, 2013 [Docket No. 242].

11

# ARTICLE II.

## TREATMENT OF UNCLASSIFIED CLAIMS

A.    *Administrative Claims*

    1.    <u>General Administrative Claims</u>

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, each holder of an Allowed Administrative Claim (other than an Allowed Professional Fee Claim or Provost Allowed Administrative Claim), will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either:  (a) on the Effective Date or as soon as reasonably practicable thereafter, or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter, or, if not then due, when such Allowed Administrative Claim is due; (c) at such time and upon such terms as may be agreed upon by the such Holder and the Debtor; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; <u>provided</u> that Allowed Administrative Claims that arise in the ordinary course of the Debtor's business shall be paid in full in Cash in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

    *2.*    <u>Professional Fee Claims</u>

All final requests for Professional Fee Claims shall be filed no later than 30 days after the Confirmation Date.   After notice and a hearing, and in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court, to the extent such approval is required.  Notwithstanding anything in the Plan to the contrary, and unless otherwise agreed to by the Holder of a Professional Fee Claim and the Debtor, the Allowed Professional Fee Claims shall be paid in full, in Cash, no later than 2 business day following the later of (a) the Effective Date and (b) the date upon which such Professional Fee Claim is approved by an order of the Bankruptcy Court.

3.      <u>Administrative Claims Bar Date</u>

All requests for payment of an Administrative Claim (other than a DIP Loan Claim or Professional Fee Claims) that accrued on or before the Effective Date that were not otherwise accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims (other than DIP Loan Claims or Professional Fee Claims) that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property. Objections to such requests must be filed and served no later than 60 days after the Administrative Claims Bar Date.

Any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claims Bar Date shall be disallowed automatically without the need for any objection from the Debtor or any other action by the Bankruptcy Court.

B.      *DIP Loan Claim*

The Holder of the DIP Loan Claim will receive, in full and final satisfaction of the DIP Loan Claim, the Remaining Cash or such other treatment agreed to by the Debtor and the DIP Lender. On the Effective Date, the DIP Loan Claim shall be Allowed in the amount of $200,000.00, plus applicable interest and fees, provided that the DIP Lender has made the Final DIP Advance.

C.      *Provost Administrative Claim*

The Provost Allowed Administrative Claim shall be payable in full from the first assets or cash available in the Creditors' Trust. For the avoidance of doubt, the sole source for payment of the Provost Administrative Claim shall be the assets of the Creditors' Trust. The Provost Administrative Claim shall not be paid from any other assets of the Debtor or its estate (other than the Creditors' Trust) and the Debtor does not warrant that sufficient funds will be available from the Creditors' Trust to satisfy the Provost Administrative Claim in whole or in part.

D.      *Priority Tax Claims*

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax

Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (b) Cash in an amount and over such period agreed to by the Debtor and such Holder.

To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, the right of the Holder of such claim, if any, to payment in respect thereof shall be determined in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if this Chapter 11 Case had not been commenced.  In accordance with section 1124 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Plan shall not alter or otherwise impair the legal, equitable or contractual rights of any Holder of a Priority Tax Claim that is not due and owing on or before the Effective Date.

E.      *United States Trustee Statutory Fees*

The Debtor shall pay all United States Trustee quarterly fees due under 28 U.S.C. § 1930(a)(6) on all disbursements including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, for each quarter until the Chapter 11 Case is converted, dismissed, or closed.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Equity Interests*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, Confirmation and distribution hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or an Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

14

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Prepetition Secured Lender Claims | Impaired | Entitled to Vote |
| 3 | USW Death Benefit Plan Participant Claims | Impaired | Entitled to Vote |
| 4 | Non-USW Death Benefit Plan Participant Claims | Unimpaired | Deemed to Accept |
| 5 | Retiree Medical Plan Participant Claims | Unimpaired | Deemed to Accept |
| 6A | General Unsecured Tort Claims | Impaired | Deemed to Reject |
| 6B | General Unsecured Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests in Henry Vogt Machine Co. | Impaired | Deemed to Reject |

B.    *Treatment of Claims and Equity Interests*

    *1.    Class 1 – Other Priority Claims*

        (a)    *Classification*:  Class 1 consists of all Other Priority Claims against the Debtor.

        (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction of each Other Priority Claim, each Holder of Such Allowed Other Priority Claim shall be paid in full in Cash on, or as soon as reasonably practicable after:  (i) the Effective Date, (ii) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

        (c)    *Voting*:  Class 1 is Unimpaired and Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holder of Class 1 Claims are not entitled to vote to accept or reject the Plan.

    *2.    Class 2 – Prepetition Secured Lender Claims*

        (a)    *Classification*:  Class 2 consists of all Prepetition Secured Lender Claims against the Debtor.

15

(b)      *Allowance*:  On the Effective Date, the Prepetition Secured Lender Claim shall be Allowed in the amount of $6,232,751.38.

(c)      *Treatment*:   Except to the extent that the Prepetition Secured Lender agrees to less favorable treatment, in exchange for full and final satisfaction of the Prepetition Secured Lender Claims, the Prepetition Secured Lender shall receive the Annuity.

(d)      *Voting*:  Class 2 is Impaired and Holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.

3.      <u>*Class 3 – USW Death Benefit Plan Participant Claims*</u>

(a)      *Classification*:  Class 3 consists of all USW Death Benefit Plan Participant Claims.

(b)      *Treatment*:  Holders of USW Death Benefit Plan Participant Claims shall receive, in exchange for full and final satisfaction of such USW Death Benefit Plan Participant Claim, their Pro Rata share of the Death Benefit Plan Payment, on, or as soon as reasonably practicable after, the Effective Date, subject to Article IV.J herein.

(c)      *Voting*:  Class 3 is Impaired and Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.      <u>*Class 4 – Non-USW Death Benefit Plan Participant Claims*</u>

(a)      *Classification*:   Class 4 consists of all Non-USW Death Benefit Plan Participant Claims.

(b)      *Treatment*:  Holders of Non-USW Death Benefit Plan Participant Claims shall receive, in exchange for full and final satisfaction of such Non-USW Death Benefit Plan Participant Claim, their Pro Rata share of the Death Benefit Plan Payment, on, or as soon as reasonably practicable after, the Effective Date, subject to Article IV.J herein.

    (c)    *Voting*:  Class 4 is Unimpaired and Holders of Claims in Class 4 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holder of Class 4 Claims are not entitled to vote to accept or reject the Plan.

5.    <u>*Class 5 – Retiree Medical Plan Participant Claims*</u>

    (a)    *Classification*:  Class 5 consists of all Retiree Medical Plan Participant Claims.

    (b)    *Treatment*:  Holders of Retiree Medical Plan Participant Claims shall receive, in exchange for full and final satisfaction of such Retiree Medical Plan Participant Claims, their applicable share of the Retiree Medical Plan Payment, on, or as soon as reasonably practicable after, the Effective Date.

    (c)    *Voting*:  Class 5 is Unimpaired and Holders of Claims in Class 5 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holder of Class 4 Claims are not entitled to vote to accept or reject the Plan

6.    <u>*Class 6A – General Unsecured Tort Claims*</u>

    (a)    *Classification*:  Class 6A consists of all General Unsecured Tort Claims against the Debtor.

    (b)    *Treatment*:     Each holder of a General Unsecured Tort Claim shall be assigned to the Creditors' Trust and receive a Pro Rata Share of the net cash proceeds generated by liquidation of the Insurance Policies after payment of the Provost Allowed Administrative Claim and any costs incurred in connection with pursuit of the Insurance Policies under procedures which will be developed by the Plan Trustee as soon as practicable on the later of (i) the Effective Date, (ii) the date on which the Plan Trustee determines, in his sole discretion, that there are sufficient funds and cash available to make practical a pro rata trust distribution grid that will enable the Plan Trustee to develop distributions to Allowed General Unsecured Tort Claims, under applicable law or any agreement relating thereto, all as determined by the Plan Trustee, in his sole

17

discretion and consistent with his fiduciary duty to the Creditors in Class 6A.  The Creditors' Trust shall be operated by the Plan Trustee.

Subject to Article II.C hereof, the sole recourse of any Holder of any Allowed General Unsecured Tort Claims shall be the assets or cash in the Creditors' Trust and no Holder of any Allowed General Unsecured Tort Claim may take any legal action for the purposes of directly or indirectly collecting, recovering, or receiving payment with respect to any claim or demand that is to be paid under this section against the Debtor, any current or past officer, director or affiliate of the Debtor with respect to any Allowed General Unsecured Tort Claim.  Notwithstanding the foregoing, nothing in this Plan shall impair any rights of recovery that any Holder of any Allowed General Unsecured Tort Claims may have directly against insurance companies that issued or have responsibility for the Insurance Policies.  Holders of Allowed General Unsecured Tort Claims may pursue direct claims against insurance companies that issued or have responsibility for the Insurance Policies where otherwise permitted by law.

(c)      *Voting:*   Class 6A is Impaired and Holders of Claims in Class 6 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holder of Class 6 Claims are not entitled to vote to accept or reject the Plan..

7.      *Class 6B – General Unsecured Claims*

(a)      *Classification*:  Class 6B consists of all General Unsecured Claims against the Debtor.

(b)      *Treatment*:  Holders of General Unsecured Claims shall not receive any Distribution on account of such General Unsecured Claims.

(c)      *Voting*:  Class 6B is Impaired and Holders of Claims in Class 6 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holder of Class 6 Claims are not entitled to vote to accept or reject the Plan.

18

8.    <u>*Class 7 – Equity Interests in Henry Vogt Machine Co.*</u>

    (a)    *Classification*:  Class 7 consists of all Equity Interests in Henry Vogt Machine Co.

    (b)    *Treatment*:  Holders of Equity Interests shall not receive any Distribution on account of such Equity Interests.  On, or as soon as reasonably practicable after, the Effective Date, all Equity Interests shall be discharged, cancelled, released and extinguished.

    (c)    *Voting*:  Class 7 is Impaired and Holders of Class 7 Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Equity Interests in Class 7 are not entitled to vote to accept or reject the Plan.

C.    *Acceptance or Rejection of the Plan*

    1.    <u>Presumed Acceptance of Plan</u>

Holders of Claims in Classes 1, 4 and 5 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and the vote of such Holders of Claims shall not be solicited.  Holders of Claims in Classes 4 and 5 are Unimpaired as a result of the terms of the Retiree Benefit Termination Order and the USW Settlement entered by the Bankruptcy Court.

    2.    <u>Voting Classes</u>

Each Holder of an Allowed Claim in Classes 2 and 3 shall be entitled to vote to accept or reject the Plan.  Holders of Claims in Class 3 are Impaired as a result of the terms of the Retiree Benefit Termination Order and the USW Settlement entered by the Bankruptcy Court.

    3.    <u>Deemed Rejection of the Plan</u>

Holders of Claims in Classes 6A and 6B and Equity Interests in Class 7 are Impaired and shall receive no Distributions under the Plan on accounts of their Claims or Equity Interests and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Claims in Classes 6A and 6B and Equity Interests in Class 7 are not

19

entitled to vote on the Plan and the votes of such Holders of Claims and Equity Interests shall not be solicited.

          4.     <u>Controversy Concerning Impairment</u>

If a controversy arises as to whether any Claims or Equity Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

D.     *Nonconsensual Confirmation*

Section 1129(a) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtor shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of:  (i) all Claims whose Holders voted in favor of the Plan, and (ii) controversies resolved pursuant to the Plan.  Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.     *Funding of the Plan*

All Cash necessary for the Debtor to make payments required pursuant to the Plan will be funded with Cash on hand and the Final DIP Advance; <u>provided</u>, <u>however</u>, that the Distribution to the Holder of Claims in Classes 3 and 4 shall be funded exclusively from the Retired Life Fund.

C.      *Assignment of the Annuity*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtor shall execute and deliver all instruments and / or other documents necessary to assign and transfer the Annuity and all rights, entitlements and proceeds therefrom and related thereto, to the Prepetition Secured Lender or an Entity designated by the Prepetition Secured Lender;

D.      *Abandonment of Assets*

Except as otherwise provided in the Plan, on the Effective Date, the Debtor shall be deemed to have abandoned the Remaining Assets (other than the Insurance Policies) and the Reversionary Interest pursuant to  section 554 of the Bankruptcy Code.  As discussed further in the Disclosure Statement, the Remaining Assets (other than the Insurance Policies) are burdensome to the estate.

E.      *Assignment of the Insurance Policies*

On the Effective Date, the Debtor shall be deemed to have assigned all of the Insurance Policies to the Creditors' Trust.  All of the Insurance Policies and all rights associated therewith shall be automatically and without further act or deed, transferred to, vested in and assumed by, and/or assigned to the Creditors' Trust.   Any insurance companies that issued or have responsibility for the Insurance Policies maintain the right to assert against the Creditors' Trust any defense to coverage already available under the policies, excepting only the defense that the transfer and/or assignment to the Creditors' Trust violated any anti-assignment provisions (or similar provisions that would prohibit assignment) under the Insurance Policies.  Any right of indemnity under the Insurance Policies based on acts or omissions occurring before the Effective Date, even if asserted and based on costs incurred after the Effective Date, and any right to a defense under the Insurance Policies is hereby preserved notwithstanding any transfer of the Insurance Policies to the Creditors' Trust.

F.      *Effectuating Documents; Further Transactions*

The Debtor may take all actions to execute, deliver, file, or record such contracts, instruments and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan without the need for any approvals, authorizations, actions, or consents, except for those expressly required pursuant hereto.  The CRO shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require the approval of the shareholders, officers or directors of the Debtor shall be deemed to have been so approved and shall be in effect on and after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, officers or directors of the Debtor, or the need for any approvals, authorizations, actions or consents.

G.    *Corporate Existence and Dissolution*

Except as otherwise provided in the Plan, the Debtor shall continue to exist after the Effective Date as a separate corporate Entity with all the powers of a corporation, pursuant to the applicable state law, and pursuant to the certificate of incorporation and bylaws in effect prior to the Petition Date. The CRO shall continue to have the authority to act on behalf of the Debtor until its dissolution, to the extent set forth in the CRO Order. Upon entry of an order of the Bankruptcy Court closing the Chapter 11 Case, and without any need for any further actions or approvals, the Debtor shall be deemed formally dissolved, wound-down and liquidated pursuant to Kentucky Revised Statutes Chapter 271B.14 and other applicable law. The Debtor is authorized, to the extent necessary under applicable law, to file articles of dissolution with the Office of the Secretary of State of the Commonwealth of Kentucky.

H.    *Cancellation of Equity Interests*

On the Effective Date, and without the need for any further actions or approvals, all Equity Interests in the Debtor shall be discharged, cancelled, released and extinguished.

I.    *Pension*

The Debtor shall continue as the sponsor of the Pension until the Pension Termination Date. The Debtor shall have the authority, without any further order or approval of the Bankruptcy Court, to: (i) transfer, assign, liquidate, annuitize or otherwise dispose of the assets and liabilities of the Pension; (ii) terminate the Pension on a voluntary or involuntary basis; or (iii) transfer its obligation to sponsor the Pension to another Entity; provided that all such actions are conducted in accordance with the provisions of the Pension, ERISA and / or other applicable law. The Debtor shall be further authorized, without any further order or approval of the Bankruptcy Court, to employ such consultants, attorneys and advisors, on behalf of the Pension, as the Debtor reasonably believes to be necessary to accomplish the above; provided, however

22

that such professionals shall be paid exclusively from the Pension, in accordance with the provisions of the Pension, ERISA and / or other applicable law. The PBGC has agreed not to receive a Distribution under the Plan, or to otherwise collect from the Estate, on account of the PBGC Claims; provided, however, that no provision of this Plan shall be deemed to prohibit the PBGC from exercising any of its statutory rights and remedies against the Debtor, or any other party, after the occurrence of Effective Date.

J.      *Disposal of Records*

The Debtor shall be authorized pursuant to sections 363 and 554 of the Bankruptcy Code, and without further order or approval of the Bankruptcy Court, to abandon, destroy or otherwise dispose of all Records not reasonably required for the administration of the Plan or the Pension or the wind-down of the Debtor, upon the Effective Date; provided, however, categories of documents identified by Provost relating to the Insurance Policies shall be first provided to Provost for transfer to the Creditors' Trust, subject to any applicable privilege, including documents in the possession of Dispute Resolution Management. Any and all reasonable expenses incurred by the Debtor to dispose of such Records, shall be deemed an Allowed Administrative Expense arising in the ordinary course of the Debtor's business. To the extent that any such Records remain in the possession of a third party, those Records shall be deemed abandoned and the parties holding such Records may dispose of them as they see fit; provided, however, that documents in the possession of Dispute Resolution Management shall first be provided or made available to Provost or its designee for recovery for a period of 90 days following the occurrence of the Effective Date, and otherwise not destroyed but turned over for Provost to collect. The Debtor's responsibilities related to the production of the Dispute Resolution Management documents shall be satisfied by its written direction to Dispute Resolution Management to turn over all documents and files related to the Insurance Policies to Provost.

K.      *Termination of Death Benefit Plan and Distribution of Retired Life Fund*

On the Effective Date, pursuant to and in accordance with the USW Settlement and the Retiree Benefit Termination Order, the Death Benefit Plan shall terminate and the Debtor shall provide notice of such termination to the Death Benefit Plan Administrator. All vested claims under the Death Benefit Plan that are incurred and submitted to the Debtor by the designated beneficiary prior to the Effective Date shall be paid in full from the Retired Life Fund. The remaining funds in the Retired Life Fund, after the payment of the reasonable expenses of the

23

Death Benefit Plan Administrator, shall be distributed Pro-Rata to the Death Benefit Plan Participants in the manner described in the Retiree Benefit Termination Order.

L.    *Vesting the Insurance Policies in Creditors' Trust*

On the Effective Date, pursuant to Sections 1123(a)(5), 1123(b)(3), and 1141(b), the Insurance Policies and all associated rights thereto shall vest in the Creditors' Trust, free and clear of Liens, claims and encumbrances and the Debtor shall be deemed without further action to have assigned the assets and property interests comprising the Insurance Policies to the Creditors' Trust free and clear of any and all liens, claims and encumbrances.  All Claims in Class 6A shall be paid solely out of the Creditors' Trust.

M.    *Standing of the Creditors' Trustee and/or Plan Trustee*

As of the Effective Date, the Creditors' Trust and/or the Plan Trustee shall be vested and automatically be conferred with, and have all of the power, authority and standing, and shall be the sole authorized Person with such authority and standing, to take any and all actions that were previously vested in the Debtor or the Estate with respect to the Insurance Policies and shall be automatically be conferred with and have authority and standing, and shall be the sole authorized Person with authority and standing, to take any and all actions that were previously vested in the Debtor, or the Estate and stand in the same position as the Debtor or the estate with respect to any claim the Debtor may have to the Insurance Policies.  For the avoidance of doubt, the Creditors' Trust and/or the Plan Trustee shall have the authority and standing to take any actions previously vested in the Debtor related to the Insurance Policies, but shall have no such standing or authority in regards to any actions or powers previously vested in the Debtor other than those related to the Insurance Policies.

N.    *Appointment of the Plan Trustee*

The Plan Trustee shall be appointed on nomination by Provost.  The Plan Trustee shall administer the assets and to make distributions from the Creditors' Trust of any value obtained in liquidation of the Insurance Policies.

# ARTICLE V.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distributions on Account of Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, Distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Initial Distribution Date; provided, however, that:  (i) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreement, course of dealing, or industry practice; (ii) Allowed Priority Tax Claims. If any, shall receive Distributions in accordance with the terms set forth in Article II.C. herein; and (iii) any Distributions to the Pre-Petition Secured Lender from the Remaining Cash will be made as soon as reasonably practical after all Disputed Claims have been resolved and all Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims, and Retiree Medical Plan Participant Claims have been paid under and in accordance with the Plan.

B.    *Distributions on Account of Disputed Claims*

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on an Alternative Distribution Date that is at least 15 days after the Disputed Claim becomes an Allowed Claim; provided, however, that (i) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Case that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreement, course of dealing, or industry practice; and (ii) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claim in accordance with Article II.C. herein.

C.    *Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

25

D.    *Delivery of Distributions*

  1.  <u>Delivery of Distributions in General</u>

  Except as otherwise provided in the Plan, the Debtor shall make Distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's records as of the date of any such Distribution, including the address set forth in any Proof of Claim filed by that Holder; provided, however, that the manner of such distributions shall be determined at the Discretion of the Debtor.

  2.  <u>Delivery of Distributions to Death Benefit Plan Participants</u>

  Pursuant to and in accordance with the USW Settlement and the Retiree Benefit Termination Order, on the Effective Date or as soon as reasonably practicable thereafter, the Death Benefit Plan Administrator shall provide the Debtor with the current balance of the Retired Life Fund and the amount of any reasonable expenses to be deducted from the Retired Life Fund to administer the termination of the Death Benefit Plan.  Upon receipt of this information, the Debtor shall, within five (5) Business Days, provide the Death Benefit Plan Administrator with a record of the amount to be distributed to each Death Benefit Plan Participant and, to the extent necessary, the Debtor's most up-to-date mailing information for each Death Benefit Plan Participant.  The Death Benefit Plan Administrator shall make the required Distribution to the Death Benefit Plan Participants within fifteen (15) Business Days of receipt of the required information from the Debtor and shall promptly provide an accounting or other confirmation of such Distributions to the Debtor.  This Distribution protocol may be modified by the joint agreement of the Debtor and the Death Benefit Plan Administrator, provided that any modified protocol results in Distributions to Death Benefit Plan Participants within a similar time period to that contemplated in this section.

  3.  <u>Undeliverable Distributions and Failure to Present Checks</u>

    (a)  *Claims other than Claims of Death Benefit Plan Participants*

  If any Distribution to a Holder of an Allowed Claim made in accordance herewith, other than an Allowed Claim of a Death Benefit Participant, is returned to the Debtor as undeliverable, such Distribution shall remain in the possession of the Debtor until such time as any such Distribution becomes deliverable; <u>provided</u>, <u>however</u>, that if a Distribution does not become deliverable before a date that is 90 days after the Effective Date, the associated Claim shall be

26

deemed disallowed and the Distribution shall be included within the Remaining Cash to be distributed to the DIP Lender on the next Alternative Distribution Date.

Checks issued by the Debtor on account of Allowed Claims shall be null and void if not negotiated within 60 days after date of issuance thereof. Requests for reissuance of any check shall be made within 30 days of cancellation and if such request is not timely received by the Debtor, the associated Claim shall be deemed disallowed and the Distribution shall be included within the Remaining Cash to be distributed to the DIP Lender on the next Alternative Distribution Date.

(b)     *Claims of Death Benefit Plan Participants*

If any Distribution to a Holder of an Allowed Claim of a Death Benefit Plan Participant (in either Class 3 or Class 4) made in accordance herewith is returned to the Death Benefit Plan Administrator as undeliverable, such Distribution shall remain in the possession of the Death Benefit Plan Administrator until such time as any such Distribution becomes deliverable; provided, however, that if a Distribution does not become deliverable before a date that is 90 days after the Effective Date, the associated Claim shall be deemed disallowed and shall be treated in accordance with the remainder of this section.

Checks issued by the Death Benefit Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within 60 days after date of issuance thereof. Requests for reissuance of any check shall be made within 30 days of cancellation and if such request is not timely received by the Death Benefit Plan Administrator or the Debtor, the associated Claim shall be deemed disallowed and shall be treated in accordance with the remainder of this section.

If the total amount of Claims disallowed pursuant to this subsection is equal to or in excess of $15,000, the Death Benefit Plan Administrator shall distribute such funds Pro Rata to all other Death Benefit Plan Participants. If the total amounts of Claims disallowed pursuant to this subsection is less than $15,000, the Death Benefit Plan Administrator shall donate such funds to Metro United Way, Inc. or any similar charitable organization selected by the Death Benefit Plan Administrator.

4.     <u>Compliance with Tax Requirements</u>

In connection with the Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all

distributions pursuant hereto shall be subject to such withholding and reporting requirements. To the extent necessary, the Debtor may condition any Distribution to the Holder of an Allowed Claim on the Debtor's receipt of an executed Form W-9 or other identifying information necessary for the Debtor to comply with applicable withholding and reporting requirements.

## ARTICLE VI.

## PROVISIONS GOVERNING DISPUTED CLAIMS

A.    *Objection to Claims and Interests*

Except with respect to any Claim Allowed by Final Order of the Bankruptcy Court or pursuant to the Plan, the Debtor shall have the sole authority to object to any Claim on or before the date that is 90 days after the Effective Date, subject to the Debtor's right to seek an extension of such deadline from the Bankruptcy Court.

B.    *Resolution of Disputed Claims*

To the extent that the Debtor objects to a Disputed Claim, such Claim shall not become an Allowed Claim until: (i) entry of a Final Order overruling the Debtor's objection; (ii) withdrawal of the Debtor's objection with prejudice; or (iii) entry of a Final Order approving a stipulation or settlement between the Debtor and the Holder of the Disputed Claim. No Distribution shall be made with respect to a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

C.    *Reserve for Disputed Claims*

Administrative Claims, Priority Tax Claims, and Other Priority Claims are the only Claims receiving Distributions under the Plan that have not been Allowed by a Final Order of the Bankruptcy Court or will be Allowed pursuant to the provisions of the Plan  As such, to the extent that, on the Effective Date, the Debtor has sufficient Cash to make Distributions on all Administrative Claims, Priority Tax Claims, and Other Priority Claims, including any Disputed Claims in such categories, the Debtor shall make a Distribution to the Holders of all Allowed Claims entitled to receive a Distribution on the Initial Distribution Date; provided, however, that the Debtor should reserve from the Remaining Cash to be distributed to the Prepetition Secured Lender, the amount of all Disputed Claims. Once each Disputed Claim has been resolved, the

28

applicable portion of the reserved funds shall be distributed to the Holder of the Claim or the Prepetition Secured Lender, as applicable, on the next Alternative Distribution Date.

EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE BANKRUPTCY COURT, OR AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE OR ADMINISTRATIVE CLAIMS FILED AFTER THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE OR ACTION OR ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS.

## ARTICLE VII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.    The Confirmation Order shall have been entered and become a Final Order.

3.    The DIP Lender shall have made the Final DIP Advance and the Debtor shall have sufficient Cash to pay all Allowed Administrative Claims, Priority Tax Claims, and Other Priority Claims.

4.    All documents, instruments and agreements necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution and delivery has been waived by the Debtor.

B.    *Notice of Effective Date*

Within five (5) Business Days of the Effective Date, the Debtor shall file a notice of occurrence of the Effective Date in the docket of the Chapter 11 Case.

C.    *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Debtor may determine, upon notice to the Bankruptcy Court, that the Plan is null and void in all respects, and nothing contained in the Plan, the Confirmation Order or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claim or Cause of Action; (ii) constitute an admission, acknowledgment, offer or undertaking in any respect by any party, including the Debtor; or (iii) otherwise prejudice in any manner the rights of any party, including the Debtor.  Notwithstanding any other provision of this Plan, if the Effective Date does not occur and the Debtor has received the Final DIP Advance from the DIP Lender, the Debtor shall, as soon as reasonably practicable, return the full amount of the Final DIP Advance to the DIP Lender.

## ARTICLE VIII.

## EFFECTS OF CONFIRMATION

A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon entry of the Confirmation Order and the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtor whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

B.    *Discharge*

Pursuant to section 1141(d)(3) of the Bankruptcy Code, except as set forth in Article III.B.6.b, neither Confirmation of the Plan nor the occurrence of the Effective Date will discharge the Debtor; provided, however, upon Confirmation of the Plan and the occurrence of the Effective Date, the Holders of Claims against, or Equity Interests in, the Debtor, other than the PBGC on account of the PBGC Claims, may not seek payment or recourse against or

otherwise be entitled to any Distribution from the assets of the Estate except as expressly provided in the Plan.

C.      *Exculpation as to Plan Solicitation*

Upon and effective as of the Effective Date, the Debtor, its directors, officers, employees, attorneys, advisors, and agents will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code.

D.      *Preservation of Releases*

Notwithstanding anything in the Plan to the contrary, the provisions of this Plan shall not reduce, limit, or adversely affect any of the releases granted to any party under the Final DIP Order, the Sale Orders, the USW Settlement, or any other Final Order of the Bankruptcy Court.

E.      *Preservation of Insurance*

Notwithstanding anything in the Plan to the contrary, the provisions of this Plan shall not diminish or impair the availability of any policies of insurance that may cover Claims against the Debtor or any other Entity.

## ARTICLE IX.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims or Equity Interests;

31

2.      Decide and resolve all matters related to any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

4.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

5.      Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

6.      Enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

7.      Enforce and implement the Sale Orders and the Final DIP Order;

8.      Resolve any cases, controversies, suits, disputes or causes of action that may arise in connection with the interpretation and enforcement of the Plan or the Confirmation Order, or any Entity's obligations incurred in connection with the Plan or the Confirmation Order;

9.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

10.     Determine any matters, and implement any necessary or appropriate orders, that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement;

11.     Enter an order or final decree concluding or closing the Chapter 11 Case;

12.     Adjudicate any and all disputes arising from or related to Distributions under the Plan;

13.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

14.     Hear and determine matters concerning state, local and federal taxes in accordance with section 346, 505 and 1146 of the Bankruptcy Code;

15.     Enforce, interpret and implement all orders previously entered by the Bankruptcy Court; and

16.     Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE X.

## MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

A.      *Modification of the Plan*

Subject to the limitations contained in the Plan:  (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy sections 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy and defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation of the Plan*

Subject to the conditions to the Effective Date, the Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans of liquidation.  If the Debtor revokes or withdraws the Plan, or if entry of the Confirmation Order or

the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) noting contained in the Plan shall (a) constitute a waiver or release of any Claims against, or Equity Interest in, the Debtor, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission of any sort by the Debtor or any other Entity.  If the Debtor has received the Final DIP Advance and the Effective Date does not occur, the Debtor shall, as soon as reasonably practicable, return the full amount of the Final DIP Advance to the DIP Lender.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.    *Additional Documents*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor and all Holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

B.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court, shall be paid for each quarter until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

C.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

D.    *Notices*

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be served on:

        Henry Vogt Machine Co.
        c/o David E. Mack, CRO
        2015 Orrington Avenue
        Evanston, IL  60201

        Henry Vogt Machine Co.
        c/o Wyatt, Tarrant & Combs, LLP
        Attn:  Daniel I. Waxman
        250 West Main Street, Suite 1600
        Lexington, KY  40507

Henry Vogt Machine Co.
c/o Wyatt, Tarrant & Combs, LLP
Attn:  Robert J. Brown
500 West Jefferson Street, Suite 2800
Louisville, KY  40502

The Creditors' Trust and Plan Trustee
c/o Mr. John A. Majors
Morgan & Pottinger, P.S.C.
601 West Main Street
Louisville KY 40202
Phone: (502) 560-6758
Fax: 1 (502) 585-3498
E-mail: jam@morganandpottinger.com

AND

Patrick L. Hughes
Haynes and Boone, LLP
1221 McKinney, Suite 2100
Houston TX 77010
Phone: (713) 547-2550
Fax: (713) 236-5401
E-mail: patrick.hughes@haynesboone.com


E.    *Reservation of Rights*

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

36

F.    *Terms of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.    *Entire Agreement*

On the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

H.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the Commonwealth of Kentucky, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan.

I.    *Nonseverability of Plan Provisions upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (iii) nonseverable and mutually dependent.

37

J.    *Closing of Chapter 11 Case*

The Debtor shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

K.    *Conflicts*

To the extent that any provision of the Disclosure Statement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision of the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

L.    *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

Respectfully submitted,


 /s/ Robert J. Brown
Robert J. Brown (KY 08363)
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, Suite 2800
Louisville, KY  40202
Telephone:  (502) 589-5235
Facsimile:  (502) 589-0309
E-mail:  Loubankruptcy@wyattfirm.com

38

Daniel I. Waxman (KY 88927)
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, KY  40507
Telephone:  (859) 233-2012
Facsimile:  (859) 259-0649
E-mail:  Lexbankruptcy@wyattfirm.com

**COUNSEL TO THE DEBTOR**

61278432.1
12/20/2014