UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

IN RE:

HENRY VOGT MACHINE CO.

    Debtor

CHAPTER 11

BANKRUPTCY NO. 12-34186

**PRELIMINARY OBJECTION OF REPUBLIC INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, GRANITE STATE INSURANCE COMPANY, AND AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY TO THE AMENDED PLAN OF LIQUIDATION OF HENRY VOGT MACHINE CO., FILED DECEMBER 22, 2014 [DN 425]**

Come Republic Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Granite State Insurance Company, and American International Specialty Lines Insurance Company (collectively, the "Objecting Insurers"), by counsel, and for their preliminary objection to the Amended Plan of Liquidation of Henry Vogt Machine Co., filed December 22, 2014 [DN 425] ("Amended Plan") state as follows.

### I.     INTRODUCTION

Objecting Insurers are parties to certain insurance contracts with Henry Vogt Machine Co. ("Debtor"). Debtor's Plan of Liquidation was filed on October 8, 2014 [DN 397] (the "Plan"). The Order Approving the Disclosure Statement [DN 418] was entered on November 19, 2014, requiring all objections to the Plan to be filed by parties in interest on or before Christmas Eve, December 24, 2014 (the "Objection Deadline").

Counsel for Debtor has now filed, on December 22nd, the Amended Plan which contains provisions, including, *inter alia*, creation of an insurance trust (the "Trust") and a transfer of all the Debtor's rights under its insurance policies to the Trust. *See*, Amended Plan, Art. IV(E). **The Amended Plan was filed only two days before the Christmas Eve Objection Deadline.**

DY15:45384:538625:4:LEXINGTON

Counsel for Debtor filed the Amended Plan to disadvantage the Objecting Insurers and all other insurers in disregard of the Federal Rules of Bankruptcy Procedure – specifically Rule 3016(c), which requires chapter 11 Plans that contain injunctions of conduct not otherwise enjoined by the Code to be accompanied by a disclosure statement that describes in specific and conspicuous language the conduct so enjoined.

The Objecting Insurers expect that additional discovery will provide support for the objections set forth below and may disclose grounds for additional objections. Therefore, the Objecting Insurers are filing their preliminary objection without having had the benefit of the discovery they would need to formulate and support all of their objections to the Amended Plan. As a result, to the extent that the objections below require evidentiary support, the Objecting Insurers cannot adequately present them to the Court at this time, and will not be able to do so by the Confirmation Hearing currently scheduled for December 31, 2014. These objections are, therefore, necessarily preliminary, and Objecting Insurers reserve their right to add to and modify their objections. For this reason, and for the reasons stated below, the Objecting Insurers are respectfully requesting additional time to conduct discovery to develop their objections described below, which is appropriate under the circumstances. *See e.g., In re Global Indus. Techs.*, 645 F.3d 201, 204 (3rd Cir. 2011) ("[W]hen a federal court gives its approval to a plan that allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed.")

**THE PLAN**

**The Plan contained no terms whatsoever related to an insurance trust.**

In fact, the Disclosure Statement, filed October 8, 2014, discussed the futility of the Debtor defending further asbestos litigation:

> As described in footnote 1 herein, DRM has already obtained recoveries from all likely insurance carriers and, despite continuing efforts, no recoveries have been obtained in the past few years. More than 10,000 claimants have asserted contingent and unliquidated claims against the Debtor based upon purported asbestos exposure, seeking recoveries from the Debtor in excess of $100,000,000.00. The cost of liquidating and administering these claims would far exceed any potential value that could be derived from the Causes of Action.

Also, as set forth in Footnote 1 to the Disclosure Statement:

> In 2003, the Debtor entered into an agreement with Dispute Resolution Management, Inc. ("DRM"), a firm that specializes in assisting its clients to pursue claims against their past liability insurers and to settle those claims. Through DRM's efforts, the Debtor has received a total of $5,740,000 in settlement payments from insurers, after deduction of DRM's commissions. In each case, the insurer continued to deny coverage but agreed to buy back the applicable policies from the Debtor for the amount of the settlement payment. While those payments have been helpful, they have reimbursed the Debtor for only about one-fourth of the cost of its asbestos litigation.

The Plan did not provide for discharge of the Debtor or for a post-confirmation injunction of claims against the Debtor:

> Confirmation of the Plan will not discharge the Debtor. However, general unsecured creditors, including asbestos claimants may not seek payment or recovery against the assets to be distributed under the Plan. Disclosure Statement, p. 18.

The Plan further provided for no post-confirmation injunction of asserting claims against either the Debtor or its insurers. Thus, if asbestos claimants believed that continued pursuit of their claims were feasible, they were free to do so. Furthermore, the Plan did not affect insurers.

**The Amended Plan**

The brand new Amended Plan contains completely new and substantial provisions creating an insurance trust and assigning the Debtor's rights under its insurance policies to the Trust:

> E.   *Assignment of the Insurance Policies*
>
> On the Effective Date, the Debtor shall be deemed to have assigned all of the Insurance Policies to the Creditors' Trust. All of the Insurance Policies and all rights associated therewith shall be automatically and without further act or deed, transferred to, vested in and assumed by, and/or assigned to the Creditors' Trust. Any insurance companies that issued or have responsibility for the Insurance Policies maintain the right to assert against the Creditors' Trust any defense to coverage already available under the policies, excepting only the defense that the transfer and/or assignment to the Creditors' Trust violated any anti-assignment provisions (or similar provisions that would prohibit assignment) under the Insurance Policies. Any right of indemnity under the Insurance Policies based on acts or omissions occurring before the Effective Date, even if asserted and based on costs incurred after the Effective Date, and any right to a defense under the Insurance Policies is hereby preserved notwithstanding any transfer of the Insurance Policies to the Creditors' Trust.

Amended Plan, Art. IV(E).

The Amended Plan further vests the Debtor's insurance policies and associated rights in Creditors' Trust:

> L.   *Vesting the Insurance Policies in Creditors' Trust*
>
> On the Effective Date, pursuant to Sections 1123(a)(5), 1123(b)(3), and 1141(b), the Insurance Policies and all associated rights thereto shall vest in the Creditors' Trust, free and clear of Liens, claims and encumbrances and the Debtor shall be deemed without further action to have assigned the assets and property interests comprising the Insurance Policies to the Creditors' Trust free and clear of any and all liens, claims and encumbrances. All Claims in Class 6A shall be paid solely out of the Creditors' Trust.

Amended Plan, Art. IV(L).

The Amended Plan contains a channeling injunction requiring all holders of General Unsecured Tort Claims to assert claims against the Trust and to be enjoined from asserting claims against the Debtor, its officers, directors or affiliates:

> Subject to Art. II.C hereof, the sole recourse of any Holder of any Allowed General Unsecured Tort Claims shall be the assets or cash

> in the Creditors' Trust and no Holder of any Allowed General Unsecured Tort Claim may take any legal action for the purposes of directly or indirectly collecting, recovering, or receiving payment with respect to any claim or demand that is to be paid under this section against the Debtor, any current or past officer, director or affiliate of the Debtor with respect to any Allowed General Unsecured Tort Claim.

Amended Plan, Art. III(B)(6).

The Amended Plan provides for appointment of the Trustee of the Trust unilaterally by Provost Umphrey, LLP ("Provost") without Court approval or opportunity to object by other parties in interest. Amended Plan, Art. IV(N). Finally, without any explanation as to how the Debtor's estate has benefitted by Provosts' actions in this case, the Amended Plan provides Provost with an allowed administrative claim in the amount of $75,000.00 to be paid first out of the Trust corpus:

> C.   *Provost Administrative Claim*
>
> The Provost Allowed Administrative Claim shall be payable in full from the first assets or cash available in the Creditors' Trust. For the avoidance of doubt, the sole source for payment of the Provost Administrative Claim shall be the assets of the Creditors' Trust. The Provost Administrative Claim shall not be paid from any other assets of the Debtor or its estate (other than the Creditors' Trust) and the Debtor does not warrant that sufficient funds will be available from the Creditors' Trust to satisfy the Provost Administrative Claim in whole or in part.

Amended Plan, Art. II(C).

The Amended Plan may not be confirmed for several reasons. First, the Debtor has provided inadequate notice of the Amended Plan. *See* Federal Rule of Bankruptcy Procedure 3016(c). Second, the Amended Plan is not "insurance neutral" because it negatively impacts insurers in the many ways discussed below. Third, the Amended Plan contains an impermissible 11 U.S.C. § 524(g) injunction without qualifying under Section 524(g). Fourth, the Amended Plan does not satisfy the confirmation requirements under 11 U.S.C. § 1129. Fifth, the Court

lacks subject matter jurisdiction to enter certain orders contemplated by the Amended Plan because the Debtor has not articulated a sufficient basis for enjoining non-debtor parties from pursuing claims against other non-debtor parties. *See*, *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

## II.    ARGUMENT

### A.    The Debtor Has Provided Inadequate Notice of the Amended Plan.

The Debtor has noticed the Plan amendments as in conformance with Federal Rule of Bankruptcy Procedure 3019, which allows for amendments to a proposed plan without re-solicitation if the court finds, upon notice and hearing, that the proposed modification does not adversely change the treatment of any creditor or the claim of any creditor or equity security holder. *Id*. While the Objecting Insurers are not willing to classify themselves as creditors (and therefore submit wholesale to the Court's equity jurisdiction), under the circumstances the proposed amendments should not be considered "non-material" as the Debtor urges. [DN 429.] In fact, because the unsecured creditors would now be subject to an injunction in favor of certain non-debtor insiders (the "Protected Parties") that was not a part of the previous version of the Plan, it is hard to conceive how the Amended Plan "provides for more favorable treatment for those creditors with General Unsecured Tort Claims," even with the purported benefit of assets that would have been abandoned. The amendments proposed by the Debtor do not qualify under Rule 3019, and the Debtor is required to re-disclose. This is required by Rule 3016(c) because the Amended Plan has added an injunction of conduct not otherwise enjoined by the Code. The need for additional disclosure is especially glaring due to the introduction of a Section 524(g) trust with no disclosure of the trust's terms or trustee, as discussed below.

### B.    The Amended Plan is Not "Insurance Neutral."

The Amended Plan is not "insurance neutral" because it impairs Objecting Insurers' legal and contractual rights in numerous ways, including, but not limited to, the following:

- The Amended Plan provides for an impermissible injunction in favor of the Protected Parties without qualifying for such an injunction under Section 524(g);

- The Amended Plan provides for an impermissible injunction in favor of the Protected Parties who might otherwise be liable for claims that may be barred by such injunction, and leaves the Objecting Insurers with the potential for full liability for such claims;

- The Amended Plan purports to assign Objecting Insurers' policies to the Trust in explicit violation of the anti-assignment provisions in the policies;

- The Amended Plan strips Objecting Insurers of their defense that the policies are not assignable under state law;

- The Amended Plan does not provide that the Objecting Insurers will be entitled to have their rights, including, but not limited to, disputes with respect to coverage, adjudicated outside of the Bankruptcy Court, which impinges the Objecting Insurers due process rights;

- The Amended Plan does not disclose the terms of any settlement that may have been brokered between the Debtor and certain asbestos claimants that gave rise to the recent Plan amendments so that parties in interest may determine whether or not there has been undue collusion, preferential treatment, or impermissible conflicts of interest;

- The Amended Plan provides no explanation of the proposed method for treating asbestos claims pursuant to the Trust such as, and by way of example and not limitation, the proposed trust distribution procedures, claim payment qualification criteria, and settlement values. Therefore, the Objecting Insurers are unable to assess whether the mechanisms of the Trust are likely to cause the Objecting Insurers to incur obligations in excess of those that might be imposed through the tort system;

- The Amended Plan provides that the Plan Trustee will be hand-picked by the Provost firm, and therefore provides no mechanism by which the qualifications of the proposed Plan Trustee may be evaluated;

- The Amended Plan impermissibly reserves certain rights under insurance policies to the Debtor while transferring other rights to the Trust, and does not provide for assurance of future performance of the Debtor's duties under the insurance policies.

C. **The Amended Plan Contains an Impermissible Section 524(g) Injunction Without Qualifying Under Section 524(g).**

The Debtor's new classification and treatment of the General Unsecured Tort Claims seeks to impose an injunction prohibiting such claimants from seeking recovery on their claims from the Debtor and the Protected Parties, thus invoking Section 524(g) of the Code. Specifically, the Amended Plan states that "the sole recourse of any Holder of any Allowed General Unsecured Tort Claims shall be the assets or cash in the Creditor's Trust and no Holder of any Allowed General Unsecured Tort Claim may take any legal action for the purposes of directly or indirectly collecting, recovering, or receiving payment with respect to any claim or demand that is to be paid under this section against the Debtor, *any current or past officer, director or affiliate of the Debtor* with respect to any Allowed General Unsecured Tort Claim." *Id*. at Art. III(B)(6). This is an impermissible third-party injunction in favor of parties expressly contemplated in Section 524(g)(4)(A)(ii) that is prohibited by Section 524(e) of the Code unless the Debtor complies with the strict requirements of Section 524(g). Section 524(g) of the Code "provides a special form of supplemental injunctive relief . . . ." *In re Combustion Eng'g., Inc.*, 391 F.3d 190, 234 (3rd Cir. 2004). In order to achieve the relief afforded by Section 524(g), a bankruptcy debtor "must satisfy the prerequisites set forth in Section 524(g) in addition to the standard plan confirmation requirements." *Id*. Here, the Debtor's Amended Plan fails to satisfy Section 524(g) as follows:

- Only an ongoing business can qualify for a channeling injunction under Section 524(g), and the Debtor does not qualify because it has ceased business operations. Indeed, this is a liquidating plan, and Section 524(g) is designed to assist reorganizing debtors;

- The Amended Plan does not expressly provide that the Trust will assume the liabilities of the Debtor as required by § 524(g)(2)(B)(i)(I), and expressly permits independent suits against insurers;

- The Debtor is not contributing any of its stock to the Trust as required by § 524(g)(2)(B)(i)(II);

- The Amended Plan does not provide that the Debtor is required to make future payments to the Trust as required by § 524(g)(2)(B)(i)(II);

- The Amended Plan does not provide that the Trust will "own, or by the exercise of rights granted under [the Amended Plan will] be entitled to own if specified contingencies occur, a majority of the voting shares of – (a) the Debtor, (b) the Debtor's parent corporation, or (c) a subsidiary of the Debtor that is also a debtor," as required by § 524(g)(2)(B)(i)(III);

- The Amended Plan advances no argument that would allow the Court to consider (or a party in interest to assess) whether the Debtor "is likely to be subject to substantial future demands for payment arising out of the same or similar conduct or events that gave rise to the claims that are addressed by the injunction" as required by § 524(g)(2)(B)(ii)(I);

- The Amended Plan advances no argument that would allow the Court to consider (or a party in interest to assess) whether "the actual amounts, numbers, and timing of such future demands cannot be determined" as required by § 524(g)(2)(B)(ii)(II);

- The Amended Plan advances no argument that would allow the Court to consider (or a party in interest to assess) whether "pursuit of such demands outside the procedures prescribed by such plan is likely to threaten the plan's purpose to deal equitably with the claims and future demands" as required by § 524(g)(2)(B)(ii)(III)

- The terms of the proposed injunction were not contained in the Debtor's disclosure statement as required by § 524(g)(2)(B)(ii)(IV)(aa);

- The Amended Plan makes no provision for the requirement that at least 75% of those holding General Unsecured Tort Claims vote in favor of the Plan as required by § 524(g)(2)(B)(ii)(IV)(bb)

- The Amended Plan provides no description whatsoever of the actual terms of the Trust so that that the Court and any interested parties may assess whether the Trust complies with the requirements of § 524(g)(2)(B)(ii)(V);

- The Amended Plan makes no provision for the appointment of a legal representative for future claimants as required by § 524(g)(4)(B)(i);

- Because the beneficiaries of the injunction are making no contribution to the Trust, and in fact only the Objecting Insurers will be required to fund the Trust, the creation of the Trust and imposition of the injunction is not fair and equitable to the Objecting Insurers and is not fair and equitable under § 524(g)(4)(B)(ii).

Whether or not the Debtor is able to comply with the strictures of Section 524(g) is a fact-intensive analysis requiring the Court to make specific findings. *See* 11 U.S.C. § 524(G)(2)(b)(ii)(I)-(V). The Debtor's sparse amendments to the Plan at the eleventh hour, coupled with no material disclosure on the myriad issues identified herein, is simply not consistent with the Debtor's obligation to demonstrate that the extraordinary relief provided by Section 524(g) is appropriate here and in the best interests of all constituents in this case.

### D. **The Amended Plan Does Not Satisfy the Confirmation Requirements Under Section 1129.**

Aside from the Amended Plan's problems described above, the Amended Plan also fails to satisfy many of the basic plan confirmation requirements of Section 1129, as follows:

- The Amended Plan impairs the Objecting Insurers legal and contractual rights, claims, and defenses, but does not provide them with a right to vote, which violates §§ 1129(a)(3), (a)(7) and (a)(8);

- The Amended Plan improperly discharges liabilities of the Protected Parties in violation of §§ 524(e) and 1141;

- The Amended Plan's proposed payments to the Provost firm as administrative expenses is not reasonable in violation of §§ 1129(a)(4) and 503(b);

- The Amended Plan does not disclose the identity or affiliations of the Trustee, and therefore the Debtor cannot demonstrate that the appointment of such person(s) "is consistent with the interests of creditors and equity security holders and with public policy. 11 U.S.C. § 1129(a)(5);

- The Amended Plan and its new distribution scheme are not supported by a liquidation analysis. 11 U.S.C. § 1129(a)(7);

- Due to the lack of any meaningful disclosure as to how the Trust will function, and the eleventh-hour introduction of an injunction in favor of the Protected Parties to the detriment of the Objecting Insurers, the Amended Plan was not proposed with the requisite "good faith" as mandated by § 1129(a)(3);

- The transfer of insurance policies to the Trust is in violation of 11 U.S.C. §§ 363 and 1129(a)(1).

E.   **The Confirmation Hearing Must be Continued; The Debtor Required to Make Additional Disclosure; and the Parties Provided Time for Discovery.**

Inadequate notice of the Amended Plan having been given under Rule 3016 as set forth above, and the Debtor having made insufficient disclosures with respect to the Amended Plan under 11 U.S.C. § 1125, the Confirmation Hearing must be continued by the Court.

The Debtor must make additional disclosure in order to provide adequate information regarding the Amended Plan as required by Section 1125, including, *inter alia*:

- The terms of any Trust Agreement.

- The identity of any proposed Trustee and information regarding him, including affiliations and the amount of compensation to be paid to any Trustee.

- A liquidation analysis comparing the return the creditors would receive under the Amended Plan to that under a Chapter 7.

- Disclosure of the circumstances surrounding negotiations of the Amended Plan with Provost and all details regarding any agreements reached with Provost.

- A complete description of funds available to the Trust.

- An estimate of the administrative expenses to be incurred by the Trust, including the terms of any employment of counsel for the Trust.

- The identification of and likelihood of possible success of any litigation to be transferred to the Trust.

- Disclosure regarding provisions to be made under the Amended Plan, if any, for compliance with the Debtor's duties under its insurance contracts.

- Disclosure of the proposed method for treating asbestos claims pursuant to the Trust.

- Disclosure of information supporting Debtor's compliance with the requirements of 11 U.S.C. § 524(g) as described in Section II(C).

Finally, the creditors and parties in interest, including the Objecting Insurers, should be given additional time to conduct discovery related to the additional disclosures required to be

made by Debtor, and additional time to file Amended Objections, prior to any hearing on confirmation of the Amended Plan.

F. **Jurisdictional Objections.**

<u>Lack of Subject Matter Jurisdiction</u>. The Plan is not confirmable because Court lacks subject matter jurisdiction (a) to enter an injunction that protects non-debtor persons or entities or (b) to enter a final judgment enjoining the state law claims of non-debtors without just compensation (*see Stern v. Marshall*, 131 S. Ct. 2594 (2011)).

### III. CONCLUSION

WHEREFORE, Objecting Insurers request entry of an order denying confirmation of the Amended Plan or, alternatively, entry of an order continuing the Confirmation Hearing as set forth above.

### RESERVATION OF RIGHTS

As noted above, Objecting Insurers have not had an opportunity to take discovery regarding the Amended Plan and have not yet received needed additional disclosure. Accordingly, Objecting Insurers reserve the right to supplement and modify these objections to state additional objections, or to revise and/or restate the objections already stated, once they have been able to complete discovery. Objecting Insurers also reserve the right to present during the Confirmation Hearing any evidence obtained during discovery and any opinion testimony provided by their experts. Objecting Insurers further reserve the right to provide legal support for the objections stated above, as well as any additional, modified, or restated objections, in the hearing briefs that will be filed with the Court in the future.

Objecting Insurers also reserve the right to join other objections to confirmation filed by other parties in interest.

PLEASE TAKE FURTHER NOTICE that Objecting Insurers intend that neither this Objection nor any later appearance, pleading, claim or suit shall waive Objecting Insurers' right to have final orders in non-core matters entered only after de novo review by a District Judge; (2) Objecting Insurers' right to trial by jury in any proceeding so triable in this case or any case, controversy or proceeding related to this case; (3) Objecting Insurers' right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (4) any other rights, claims, actions, defenses, setoffs or recoupments to which Objecting Insurers are or may be entitled under agreement, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, setoffs and recoupments Objecting Insurers expressly reserve.

Respectfully submitted,

*/s/ Elizabeth Lee Thompson*
Elizabeth Lee Thompson
D. Cooper Robertson
STITES & HARBISON PLLC
250 W. Main Street, Suite 2300
Lexington, KY 40507
Email: ethompson@stites.com
COUNSEL FOR OBJECTING INSURERS

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was served this the 24th day of December, 2014 in accordance with the method established under this Court's CM/ECF Administrative Procedures upon all parties in the electronic filing system in the case including the debtor's counsel, and the U.S. Trustee.

*/s/ Elizabeth Lee Thompson*
Elizabeth Lee Thompson